Charles Fischer, Appellant, v. Dickinson Industrial Site, Inc., et al., Appellees.

Gen. No. 47,058.

First District, Second Division.
November 26, 1957.
Released for publication January 14, 1958.

Charles Rivers Aiken and Frank E. McDonald, of Chicago (Charles Rivers Aiken, of counsel) for appellant.

Wham, Welch, Metzdorf & McKee, Finn, Tollkuehn & Smith, and Mural J. Winstin, all of Chicago, for certain defendants; Robert W. Scherman, Per Se.

PRESIDING JUSTICE KILEY delivered the opinion of the court.

This is an appeal from an order allowing attorney's, and other, fees in a proceeding to liquidate the assets and business of a corporation. Plaintiff, who appeals, is a holder of a Voting Trust Certificate under a voting trust agreement covering the stock of the defendant corporation.

The complaint was filed in October, 1950. It does not present "an action by a shareholder" under the Involuntary Dissolution and Receivership Act (Ill. Rev. Stat., Chap. 32, Pars. 157.82–157.94) because it does not allege a "deadlock" under (a)(1) or (a)(2), "illegal, oppressive or fraudulent" acts of defendant directors or trustees under (a)(3) or misapplication or waste of corporate assets under (a)(4).

Defendants originally asserted lack of jurisdiction of the court to liquidate the assets of the corporation. Subsequently, however, the corporation through the defendant voting trustees submitted to the jurisdiction and asked the court's instruction with respect to a course of action leading to a sale of the corporation assets. Thereafter, a Complete Plan of Liquidation was adopted and executed under the court's super-

465

vision. For these reasons we are of the opinion that this proceeding grew into a proceeding under the Voluntary Dissolution Act (Pars. 157.74–157.81) in which the defendant corporation applied to the court "to have the liquidation continued under the supervision of the court. . . ." Par. 157—79.

We need not detail the many steps leading to the final liquidation order of the chancellor directing the filing of Articles of Dissolution "on or before May 16, 1956." That order was entered May 11, 1957, and was the culmination of a series of steps taken by the defendant's directors and voting trustees to dissolve the defendant corporation and liquidate its assets through a sale. This course of action was begun with the petition for instruction filed March 24, 1955, and involved the preparation, adoption, approval and execution of the Complete Plan of Liquidation. The Plan was pursuant to section 337 of the U. S. Revenue Act. Under this section a capital gains tax of about $300,000 was avoided by selling for $2,560,000 all the corporate property within 12 months of the adoption of the Plan.

In January of 1956 the defendant voting trustees petitioned the court for authority to pay $5,000 each to two attorneys with whom the trustees had negotiated settlements of fee claims. The petition stated plaintiff's attorney, Scherman, and the trustees had not reached an agreement and requested an early hearing of the Scherman claim. The chancellor directed the three attorneys to file a formal application for fees. This was done not only by the three attorneys involved in the original petition, but by defendants Hillebrecht and Ferry as officers; by Wham, Welch, Metzdorf and McKee, law firm of defendant-trustee Wham; and by other attorneys associated with the Wham firm in representing the corporate defendant and voting trustees. Also a petition was filed by an accountant's firm. These petitions were considered and evidence heard

466

upon them by the chancellor; and on May 7, 1956, the chancellor entered the order appealed from allowing a total of $132,500 in fees.

Plaintiff contends that the chancellor had no jurisdiction to allow the fees, that attorney's fees are not allowable directly to the attorney and must be allowed to the parties, that attorney's fees cannot be allowed in this proceeding on the theory that a common fund was enhanced, and that a trustee cannot receive fees for his own legal services. We shall consider these contentions and shall not consider points made by defendants in their brief and also made in their motion to dismiss the appeal. The motion is being denied by separate order.

The jurisdictional contention made by plaintiff rests on the claim that since the Corporation Act which gives power to the courts of equity to liquidate the assets of corporations confers no power to allow attorney's fees, that power has been withheld from the courts. The arguments of plaintiff in support of this contention refer to the dissolution of a corporation under the Involuntary Dissolution and Receivership Act (Pars. 157.82 and 157.94) in which courts of equity are expressly empowered to decree dissolution of corporations. The arguments are not relevant to this proceeding under the Voluntary Dissolution Act (Par. 157.79(c)). Neither are the cases cited to support this argument pertinent.

The activities of the voting trustees, directors, attorneys and others engaged in the liquidation were performed in bringing about the main objective of plaintiff's suit. The Voluntary Dissolution Act (Pars. 157.74–157.81) makes no mention of the court's allowing fees because the Act contemplates that the corporation is dissolving itself. In providing for the court's mere "supervising," the Act does not contemplate court officers, as in the Involuntary Dissolution Act, for whose services the court should make provision.

467

But this is not to say that in assuming supervision of the corporation's voluntary dissolution, the court may not decide an issue, upon a claim for fees, which arises directly from the liquidation, as in the claim of Attorney Scherman. Had there been complete agreement upon the fees, the court might merely have approved, as it had in other matters. On the other hand, it might not have approved if the fees were unreasonable even though no objections were made. This would be a "correction" within Webster's definition of "supervise." (See Webster's New International Dictionary, 2nd ed.) Moreover, it would be absurd for the supervising chancellor to remit Scherman's claim to a suit at law. We see no merit to the contention that the court lacked jurisdiction to decide the fees issue. The case of Wiedoeft v. Frank Holton & Co., 294 Ill. App. 118, does not militate against this conclusion.

Finally, when the jurisdiction of the court was invoked to supervise the liquidation of the corporation, the voting trust was submitted to the court; and the broad, exclusive equity jurisdiction over trusts (Equity Jurisprudence Pomeroy, 5th Ed., p. 206) became operable with the power of the chancellor over the fees claimed by the several attorneys, officers and accountants.

We need not consider, on the foregoing point, whether plaintiff's suit benefited a common fund which ought to be charged with the fees. The corporation employed the services of those who were allowed fees and the chancellor had jurisdiction to approve proper payment of the fees.

██ The claim is made that the order must be reversed because the fees were ordered paid to the attorney, instead of to the parties. This is the rule in foreclosure proceedings (Klein v. Chicago Title & Trust Co., 295 Ill. App. 208); in cases where a common fund has been preserved, protected or involved (First Na-

468

tional Bank v. LaSalle-Wacker Bldg. Corp., 280 Ill. App. 188); and in suits to construe wills (Montgomery v. Dime Savings Co., 290 Ill. 407). In the latter case the court said at page 409, "Where there is a statute providing for an allowance of solicitors' fees, the allowance can only be made to the party to the litigation and not to the solicitor performing the services." The claim has no merit as applied to the facts here.

In the instant case there is no claim that the fees allowed are excessive, and there is no claim that the services were not rendered or necessary in the liquidation. And the claim of plaintiff does not reach the fees of the officers nor the accountants. The corporation asked for authority to pay two attorneys, including Scherman, with whom it had negotiated settlement of fees. If plaintiff's contention were right the court would have to direct the corporation to allow itself fees with which to pay the attorneys.

In Attorney Scherman's petition he claimed fees for representing plaintiff and fees for services rendered to the corporation with plaintiff's knowledge. He claimed $56,745 and was allowed $20,000. We have no way of knowing what part compensated for services to plaintiff and what part for services to the corporation. Plaintiff does not show that the fees were not entirely allocated by the chancellor to services rendered to the corporation for providing a better purchase price for the corporate properties. In the absence of such a showing, we presume that the chancellor allowed the fees to Scherman for services rendered the corporation; and, consequently, our reasoning and conclusion in the next preceeding paragraph applies to Scherman; and there was no impropriety in the allowance to him directly.

We see no merit in the claim that the corporation should not be required to pay the fees of the voting trustee's law firm. The record shows that the services

were rendered to the corporation and to the voting trustees. Furthermore, that law firm had been the corporate attorneys since 1938 and served without objection from the plaintiff in this cause since its inception. In Gray v. Robertson, 174 Ill. 242, the Supreme Court said that its repeated decisions had adopted the common law rule that, in the absence of an express contract giving the right, a trustee had no right to compensation for services rendered in connection with the trust. Here, the corporation agreed in the voting trust agreement to pay the trustees reasonable compensation for services rendered as "officers and/or counsel for the Trustees and/or the Corporation."

We have considered all points necessary for the decision. The order of May 7, 1956, is affirmed.

Affirmed.

FEINBERG and LEWE, JJ., concur.